## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

AMY DAVIS,

      Plaintiff,

v.

JERAMEY PETERS,

      Defendants.

No. 2:25-cv-10159

Hon.

_____/

OLIVER BELL GROUP
Paul Matouka (P84874)
50 W. Big Beaver Rd.
Suite 200
Troy, MI 48084
(248) 327-6556
notifications@oliverlawgroup.com
Attorneys for Plaintiff
_____/

## COMPLAINT AND JURY DEMAND

      NOW COMES Plaintiff, Amy Davis, by and through her attorneys, Oliver Bell Group, and for her Complaint alleges the following:

### Parties

1.  Plaintiff Amy Davis ("Ms. Davis") is a resident of Pontiac, Michigan.

2.  Defendant Jeramey Peters was a police officer employed by the Auburn Hills Police Department at all times relevant to the allegations in this Complaint. Upon information and belief, Defendant Peters is a resident of Oxford, Michigan in Oakland County.

### Jurisdiction and Venue

1

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under the First and Fourth Amendments to the United States Constitution and 42 U.S.C. § 1983.

4.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as all parties reside in the Eastern District of Michigan and all of the allegations giving rise to this complaint occurred within the Eastern District of Michigan.

**Factual Allegations**

5.  On June 8, 2024, Defendant Peters responded to a call about a domestic disturbance on Knollwood Street in Auburn Hills, Michigan.

6.  At no point was Ms. Davis alleged to have been involved in the domestic disturbance and no evidence obtained at any point indicated she was involved.

7.  Ms. Davis is related to the parties who were involved in the domestic disturbance and was present at the scene as a private citizen and family member to the parties involved in the domestic disturbance.

8.  One of the individuals alleged to have been involved in the domestic disturbance was Laura Davis (hereinafter "Laura"), Plaintiff's sister.

9.  Laura was placed in handcuffs at approximately 12:26 P.M.

10. Ms. Davis followed Defendant Peters and his colleague as they escorted Laura to their nearby police cruiser.

11. At this point, Ms. Davis was filming the events to ensure Laura was treated appropriately.

12. Defendant Peters and his colleague were explaining to Laura the reason she was being arrested and taken to jail.

13. At this point, Laura was already handcuffed inside the police cruiser when the altercation between Ms. Davis and Defendant Peters occurred.

14. At this point, Defendant Peters was not acting in an investigatory capacity as he was merely explaining the law as it related to domestic violence and why Laura *had* to be arrested.

15. At this point, Defendant Peters had already obtained all the necessary information to arrest Laura on a domestic violence charge based on conversations with Laura and other parties who were involved or witnesses to the dispute.

16. At approximately 12:35 P.M. Ms. Davis asked Defendant Peters what he was shaking for.

17. Defendant Peters responded that he was not shaking.

18. Ms. Davis informed him that his mouth was shaking.

19. Defendant Peters then aggressively approached Ms. Davis and threatened to arrest her by saying, "why don't you leave before you go with your sister."

20. Ms. Davis was under no legal obligation to leave.

21. Defendant Peters informed Ms. Davis that she was "interfering" and had "five seconds to leave".

22. Ms. Davis asked how she was interfering and why she had to leave.

23. Defendant Peters informed Ms. Davis that she was "interfering with a police investigation" and moved to within inches of Ms. Davis to intimidate her while continuing to threaten to arrest her.

24. After Ms. Davis informed Defendant Peters that he was going to get sued, he made the decision to arrest her.

25. At 12:34, expressing his frustration with Ms. Davis and her family, who are all Black, Defendant Peters said, "the fucks wrong with you people?"

26. To mitigate the absence of probable cause to arrest Ms. Davis, Defendant Peters then began asking if she was drunk and implying that she was slurring her words.

27. Ms. Davis was not drunk, nor had she been drinking.

28. Once Ms. Davis was placed in his squad car, Defendant Peters turned up the heat before exiting to address other matters, intentionally increasing the heat to uncomfortable levels to punish Ms. Davis for her speech.

29. At one point, Defendant Peters explicitly said that he was "letting her cook right now" while Ms. Davis was in his police cruiser.

4

30. After leaving Ms. Davis in his police cruiser with the heat turned on, Defendant Peters returned to the vehicle and drove Ms. Davis around before releasing her with a misdemeanor ticket for "interference with police department and related offenses".

31. As a result of Defendant Peters' conduct, Ms. Davis suffered mental and emotional injuries associated with the unconstitutional seizure of her person.

32. Ms. Davis has sought treatment for her mental and emotional injuries.

33. Ms. Davis also experienced physical discomfort because of being handcuffed and then left in the police cruiser after Defendant Peters turned the heat up.

### COUNT I: 42 U.S.C. § 1983 – First Amendment Retaliation

34. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

35. Defendant Peters initially threatened to arrest Ms. Davis because she asked him why he was shaking.

36. This question was protected speech under the First Amendment.

37. Furthermore, Ms. Davis' question did not interfere with any police duties.

38. Ms. Davis' statement that she would sue Defendant Peters if he arrested was also protected by the First Amendment.

39. Defendant Peters chose to arrest Ms. Davis not because she was impeding any type of investigation but because he did not like her speech.

40. By arresting Ms. Davis based on the content of her speech, Defendant Peters violated her First Amendment rights.

**COUNT II: 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure**

41. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

42. Defendant Peters lacked probable cause to arrest Ms. Davis for any crime.

43. Therefore, all force applied by Defendant Peters was *per se* excessive.

44. Despite lacking probable cause to arrest Ms. Davis, Defendant Peters did so, violating her Fourth Amendment rights.

45. Defendant Peters further applied unreasonable "force" by intentionally turning the heat in his car up to cause Ms. Davis discomfort while she sat in the vehicle.

46. Moreover, even if Defendant Peters had probable cause to arrest Ms. Davis, turning up the heat in the car to let her "cook" was an application of force unrelated to any law enforcement objectives as Ms. Davis was handcuffed in the back of the police cruiser and not resisting.

WHEREFORE, Plaintiff respectfully requests that this Court find that Defendant Peters violated Plaintiff's rights in the manner set forth above and award:

    a. Nominal, compensatory, and punitive damages;

    b. Reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

     c.  Any other relief that this Court deems just and proper.

Plaintiff hereby requests a trial by jury.

Respectfully submitted,

**OLIVER BELL GROUP**

Dated: <u>January 16, 2025</u>

<u>/s/ Paul Matouka</u>
Paul Matouka (P84874)
Oliver Bell Group
Attorneys for Plaintiff
50 W. Big Beaver Rd.
Suite 200
Troy, MI 48084
notifications@oliverlawgroup.com